# United States Court of Appeals for the Federal Circuit

2007-1504

CORLISS O. BURANDT,

Plaintiff-Appellant,

v.

Jon W. Dudas, DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellee.

Scott F. Yarnell, Hunton & Williams LLP, of McLean, Virginia, argued for plaintiff-appellant. Of counsel on the brief were Donna M. Praiss, Elizabeth M. Wieckowski, and Eugene C. Rzucidlo, of New York, New York; and George M. Macdonald, Law Office of George M. Macdonald, of New Canaan, Connecticut.

Mary L. Kelly, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for defendant-appellee. With her on the brief were Stephen Walsh, Acting Solicitor, and Thomas L. Stoll, Associate Solicitor.

Appealed from: United States District Court for the Eastern District of Virginia

Senior Judge Claude M. Hilton

# United States Court of Appeals for the Federal Circuit

2007-1504

CORLISS O. BURANDT,

Plaintiff-Appellant,

v.

Jon W. Dudas, DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Virginia in Case No. 1:06-CV-1141, Senior Judge Claude M. Hilton.

_____

DECIDED:  June 10, 2008

_____

Before NEWMAN, LOURIE, and BRYSON, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Corliss O. Burandt ("Burandt") appeals from the decision of the United States District Court for the Eastern District of Virginia granting summary judgment in favor of the Director ("Director") of the U.S. Patent and Trademark Office ("PTO") and affirming the Director's denial of Burandt's request to reinstate his patent for failure to pay the maintenance fee.  Because the district court did not err in upholding the Director's denial of Burandt's request for reinstatement, we affirm.

BACKGROUND

In 1980, Burandt designed internal combustion engines for Investment Rarities, Inc. ("IRI"). The following year, Burandt entered into an assignment agreement with IRI ("the 1981 Agreement"). The agreement provided that IRI would fund Burandt's research efforts and, in return, any patent application or patent resulting from that research would become the property of IRI. As compensation, Burandt was entitled to receive a percentage of the profits derived from the patents. Burandt was also entitled to repurchase the patents from IRI in the event IRI ceased funding Burandt's research. To exercise that option, Burandt was required to provide written notice and payment, or alternatively, a lien against future revenues to IRI.

On April 7, 1988, Burandt filed a patent application that issued as U.S. Patent 4,961,406 ("the '406 patent") on October 9, 1990. Burandt is the named inventor on the '406 patent and IRI is the assignee. The '406 patent is directed to "methods and devices for affecting the size and timing of valve events as related to air-fuel mixture burn rates for the optimizing of engine performance at various engine speeds." '406 patent col.1 ll.10-15. Pursuant to the agreement, IRI was the legal title holder of the '406 patent at the time of issuance. However, Burandt tried to exercise his repurchase rights even before the patent issued on March 30, 1989, and Burandt claims that he thus gained equitable title to the patent.

IRI, as the legal title holder, was required to pay maintenance fees at three points during the life of the patent, viz., three and a half, seven and a half, and eleven and a half years from the date of issuance. 35 U.S.C. § 41(b). The first maintenance fee was due on April 9, 1994, but under the statutory provision governing maintenance fees, the

fee could be paid up to six months from that date without a surcharge. <u>Id.</u> IRI failed to pay the first maintenance fee by the end of the six-month grace period, and the patent accordingly expired on October 9, 1994.

According to Burandt, he became mentally disabled at some point before 1992. Burandt submitted a declaration from his psychiatrist, Dr. Warner, who has continuously treated Burandt since 1992. Dr. Warner opined that Burandt had been suffering from an anxiety disorder that precluded him from holding a job since before Dr. Warner started treating him. Because Burandt was without a job, he began relying on government assistance in 1991.

Burandt learned of the expiration of the '406 patent in December 2001, seven years after the patent had expired, when he contacted the PTO about his patent after reading an article about Honda's introduction of a variable valve engine. Burandt admits that he did not inquire about the '406 patent at any point before then. After learning of the expiration, Burandt sought financial and legal assistance in an effort to reinstate his patent by reaching out to attorneys, the press, congressional leaders, and automobile manufacturers. He sought and actually regained legal title from IRI on May 21, 2002, long after the patent had lapsed.

On October 13, 2005, Burandt, through his attorney George Macdonald, filed a petition in the PTO under 37 C.F.R. § 1.378(b) for acceptance of a delayed maintenance fee payment, asserting that the failure to pay the maintenance fee was unavoidable. Burandt argued that he should not be bound by IRI's actions, <u>viz.</u>, its failure to pay the maintenance fee, because he held equitable title in the patent and he was excusably unable to pay the fee. Burandt urged the PTO to consider the reasons

for his inaction in deciding whether the delay in the payment of the maintenance fee was unavoidable. The PTO denied the petition on October 31, 2005. Burandt filed a petition for reconsideration of the decision, which was denied on February 1, 2006. Burandt then filed another petition for reconsideration, which was denied in the Final Agency Action dated May 26, 2006.[1]

Burandt brought an action against the Director under the Administrative Procedure Act ("APA") in the Eastern District of Virginia, alleging that the Director's denial of his request for reinstatement was arbitrary and capricious and an abuse of discretion. Both parties moved for summary judgment. On July 12, 2007, the district court granted summary judgment in favor of the Director. Burandt v. Dudas, 496 F. Supp. 2d 643 (E.D. Va. 2007). In reaching its decision, the court noted that under our decision in Ray v. Lehman, 55 F.3d 606 (Fed. Cir. 1995), one must look to the actions of the party responsible for payment of the maintenance fees to determine whether a delay in payment was unavoidable. The court determined that IRI was the party responsible for making payment here and that Burandt failed to proffer any evidence showing that IRI exercised due care in paying the maintenance fee. In contrast, the record showed that IRI deliberately allowed the '406 patent to expire, as it had allowed three others of Burandt's patents to expire prematurely. The court also rejected Burandt's assertion that his actions, as the putative equitable owner of the patent, should have been considered in the unavoidable delay analysis. The court found, however, that even if Burandt's actions had been considered, Burandt failed to show

---

[1] Burandt also filed a fourth petition, a Petition Under 37 C.F.R. § 1.183 for Suspension of Rule 37 C.F.R. § 1.378(b) ("Rule 183 petition"), which the PTO denied in its May 26, 2006 decision.

reasonable care in paying the maintenance fee and thus the same result would have been reached. The court entered final judgment in favor of the Director.

Burandt timely appealed the court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's grant of summary judgment de novo, reapplying the standard applicable at the district court. See Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1301 (Fed. Cir. 1999). Because this case was brought under the APA, we apply the standard of review set forth in that statute. The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under an arbitrary and capricious standard, the scope of review is narrow and a court may not "substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). A court reviewing the agency decision "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974) (quotations omitted). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Star Fruits v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

On appeal, Burandt raises four primary arguments. First, Burandt argues that the district court erred by giving deferential review to the PTO's determination regarding unavoidable delay. Second, Burandt asserts that the court erred by focusing on the actions of IRI as the legal title holder in determining whether there was unavoidable delay rather than focusing on the actions of Burandt as the equitable owner. Third, Burandt contends that the court erred by failing to find that Burandt's delay in paying the maintenance fee was literally unavoidable. Lastly, Burandt argues that the court erred in sustaining the denial of the Rule 183 Petition.

In response, the Director argues that the district court correctly concluded that the PTO's denial of Burandt's request for reinstatement was neither arbitrary nor capricious. The Director asserts that, under Ray v. Lehman, 55 F.3d 606 (Fed. Cir. 1995), the court properly considered the actions of IRI as the legal title owner. According to the Director, the record demonstrated that IRI failed to pay the required maintenance fee and thus that Burandt failed to make a showing of unavoidable delay. Lastly, the Director argues that the court correctly determined that even if the actions of Burandt had been considered, Burandt's claim would still have failed because he did not exercise sufficient diligence to satisfy the unavoidable delay standard.

We agree with the Director. The Patent Act governs whether a patent that has expired due to nonpayment of maintenance fees can be reinstated. Pursuant to 35 U.S.C. § 41(b), maintenance fees are to be paid at three different intervals during the life of a patent. 35 U.S.C. § 41(b). In the event payment of a maintenance fee is not received in the PTO by the due date or within a six-month grace period, "the patent will expire as of the end of such grace period." Id. The statute further provides that:

> (c)(1) The <u>Director may accept</u> the payment of any maintenance fee required by subsection (b) of this section which is made within twenty-four months after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional, or at any time after the six-month grace period <u>if the delay is shown to the satisfaction of the Director to have been unavoidable</u>.

35 U.S.C. § 41(c)(1) (emphases added). Thus, the statute provides the Director with the discretion to accept a late maintenance fee any time after the close of the grace period if the delay is shown to the satisfaction of the Director to have been unavoidable.

In <u>Ray</u>, we held that "in determining whether a delay in paying a maintenance fee was unavoidable, one looks to whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person." <u>Ray</u>, 55 F.3d at 609. Under the PTO regulations, a patentee can show unavoidable delay by demonstrating that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition [to accept an unavoidably delayed payment] was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent." 37 C.F.R. § 1.378(b)(3). In addition, "[t]he showing must enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly." <u>Id.</u>; <u>see</u> <u>also</u> <u>Ray</u>, 55 F.3d at 609.

Here, IRI, as the legal title holder of the patent, was the party responsible for paying the maintenance fee. The record demonstrated that IRI failed to exercise reasonable care in ensuring that the maintenance fee would be paid in a timely manner. Indeed, the record was devoid of any evidence suggesting that IRI took any steps to make timely payment of the maintenance fee. Rather, the record indicated that IRI allowed the '406 patent to expire, as it had deliberately allowed three others of

Burandt's patents to expire. As such, under the guidance set forth in <u>Ray</u>, we find no clear error of judgment or any abuse of discretion with regard to the Director's conclusion that unavoidable delay was not shown.

We disagree with Burandt's argument that the district court erred by focusing on the actions of IRI. According to Burandt, he attempted to gain legal title to the '406 patent in March 1989 by exercising his repurchase rights under the 1981 Agreement, but IRI "obstinately" refused to reassign the patent, and the relationship between the two parties deteriorated. Notwithstanding IRI's refusal to reassign, Burandt contends that he gained equitable title to the patent when he exercised his repurchase rights in 1989. Therefore, Burandt asserts that the ownership of the '406 patent was "divergent" at the time the first maintenance fee was due, and thus that he should not be bound by IRI's actions.

Burandt's argument directly flies in the face of our holding in <u>Ray</u>, where we expressly held that it is the actions of the party responsible for making payments of the maintenance fees, the legal title owner, that must be considered when evaluating unavoidable delay under 35 U.S.C. § 41(c). To the extent that Burandt suggests that the Director cannot rely only on a party's representation of ownership when presented with a petition for reinstatement under 37 C.F.R. § 1.378, we find no basis to adopt such a rule. The Director is entitled to rely on the representations of ownership by the parties and need not engage in a separate analysis to determine title ownership. Moreover, even if Burandt could have been considered the equitable owner of the patent, that status would not override the fact that IRI was the owner of record with the legal responsibility of paying the maintenance fees. The Director is entitled to rely on the

record and does not have to conduct an equitable analysis in order to determine who must pay the maintenance fee.

Burandt further cites Futures Technology, Ltd. v. Quigg, 684 F. Supp. 430, 431 (E.D. Va. 1988), and Total Containment Inc. v. Buffalo Environmental Products, 35 U.S.P.Q. 2d 1385 (E.D. Va. 1995), in support of his assertion that the relevant inquiry should have been whether Burandt, as the equitable owner, intentionally abandoned the patent. As a preliminary matter, both Futures and Total Containment were decided by the District Court for the Eastern District of Virginia and thus, in contrast to our decision in Ray, are not binding precedent. Moreover, both cases concerned abandoned patent applications pursuant to 37 C.F.R. § 1.137, rather than reinstatement of expired patents due to nonpayment of maintenance fees pursuant to 37 C.F.R. § 1.378.

Additionally, those cases are factually distinguishable. In Futures, a case decided before Ray, the plaintiff entered into an agreement with a company that was made responsible for filing patent applications on the plaintiff's inventions. The contract expressly provided that the plaintiff was the equitable owner of any patent applications or patents relating to its inventions. Although the prosecuting company received notice of the rejection of the patent application and ultimately abandoned the application, the company withheld such information from the plaintiff. Notably, when the plaintiff asked the company about the status of the application, the company misled the plaintiff into believing that work was being done on the application, when in fact the application was abandoned. The district court held that the plaintiff's delay in prosecuting the application was unavoidable given the deception and hence the equities in that case. Futures, 684 F. Supp. at 431.

Here, unlike the plaintiff in Futures, the record shows that Burandt did not make repeated inquiries about the status of his patent. Burandt conceded that he did not inquire about the '406 patent at any point during the time period between when the patent issued in 1990 and when he read the Honda article in 2001—over a decade later. Moreover, there is no evidence in the record that IRI made misrepresentations to Burandt about the status of the '406 patent as the company had done in Futures. Significantly, Burandt conceded that he was aware that IRI had previously allowed three of his other patents to expire; yet he continued to rely on IRI to make the maintenance fee payments. Burandt's reliance on Futures is therefore misplaced.

We likewise find Total Containment distinguishable from the present case. While that case also involved the purported abandonment of patent applications, the court considered a different standard—the "unintentional delay" standard of 37 C.F.R § 1.137. As such, we are not persuaded by Burandt's assertion that reversal is warranted in light of Futures and Total Containment.

We further disagree with Burandt's assertion that the district court erred by giving deferential review to the PTO's determination of unavoidable delay. Burandt's argument appears to be premised on his assertion that the court's conclusion that delay was not unavoidable conflicts with the Congressional intent of 35 U.S.C. § 41, viz., "to avoid the inequitable loss of patent rights," which Burandt states appears in the legislative history. While it may well have been the intent of Congress to permit patentees to avoid the inequitable loss of patent rights, Congress gave the Director the responsibility of determining the circumstances under which a late payment may be waived. We agree with the Director that unavoidable delay was simply not shown in this

case, particularly in light of IRI's failure to pay the maintenance fee combined with Burandt's failure to inquire about the status of his patent until over a decade after his patent issued. We thus find no conflict with the intent of the statute.

We are likewise unpersuaded by Burandt's argument that the district court erred in failing to find that the delay in paying the maintenance fee was literally unavoidable. Burandt essentially argues that the court wholly ignored Burandt's destitute financial condition during the relevant time period and failed to give due weight to Burandt's mental disability in concluding that Burandt's actions failed to meet the unavoidable standard. We conclude that the district court did not err when it considered and rejected the evidence relating to Burandt's purported mental disability and destitution. Although the facts surrounding Burandt's situation are no doubt unfortunate, they are irrelevant given IRI's status as the legal owner of the patent at the time the first maintenance fee was due. In any event, the Board and the district court considered Burandt's financial status and mental condition, but found no evidence in the record to show that, despite his condition, he could not have inquired into the status of his patent during the eleven years between the patent's issuance and his discovery of its expiration in 2001.

Lastly, we disagree with Burandt that reversal is warranted because the district court erred in sustaining the denial of his Rule 183 petition. Burandt filed a petition under 37 C.F.R. § 1.183, which provides that:

> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed.

37 C.F.R. § 1.183. The PTO denied Burandt's request for waiver upon concluding that a showing of unavoidable delay is required under § 1.378 and thus that the fee cannot be waived. There is no error in the PTO's denial or in the district court's upholding of that denial. Section 183 is cast in discretionary terms, providing that the Director may waive a requirement. He did not waive the fee requirement here, and, for the reasons stated above, we find no error with respect to that decision.

We have considered Burandt's remaining arguments and found none that justify reversal. Accordingly, we conclude that the Director's decision to deny Burandt's request for reinstatement of the '406 patent was neither arbitrary or capricious, nor an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

## AFFIRMED