NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE,**
*Plaintiff-Appellant,*

AND

**E.I. DU PONT DE NEMOURS AND CO.,**
*Plaintiff-Appellant,*

**v.**

**MICHELLE K. LEE, Deputy Director, United States Patent and Trademark Office,**
*Defendant-Appellee.*

---

2013-1628

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 12-CV-1034, Judge Liam O'Grady.

---

Decided: October 29, 2014

---

DONALD R. DUNNER, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for plaintiff-appellant E.I. DuPont de Nemours and Compa-

ny. With him on the brief were RONALD A. BLEEKER and ANDREW J. VANCE. Of counsel on the brief for plaintiff-appellant President and Fellows of Harvard College was CHRISTOPHER B. MEAD, London & Mead, of Washington, DC.

DENNIS C. BARGHAAN, JR., Assistant U.S. Attorney, United States Attorney's Office, Eastern District of Virginia, United States Department of Justice, of Alexandria, Virginia, argued for defendant-appellee. With him on the brief was DANA J. BOENTE, United States Attorney. Of counsel on the brief were NATHAN K. KELLEY, Solicitor, MEREDITH H. SCHOENFELD, and MARY L. KELLY, Associate Solicitors, United States Patent and Trademark Office, of Alexandria, Virginia.

---

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

MOORE, *Circuit Judge.*

The President and Fellows of Harvard College and E.I. du Pont de Nemours and Company (collectively, Harvard) appeal from the district court's grant of summary judgment affirming the United States Patent and Trademark Office's (PTO) finding that U.S. Patent No. 5,925,803 had expired as a result of a terminal disclaimer and refusal to enter new claims during the reexamination of the patent on that basis. Because the district court properly found that the PTO's determination that the patent had expired was not arbitrary, capricious, an abuse of discretion, or contrary to law, we *affirm*.

## BACKGROUND

This appeal relates to the family of patents directed to the "Harvard mouse" inventions. These patents disclose inventions related to a transgenic research animal (preferably a rodent such as a mouse) with an activated onco-

gene sequence, i.e., a gene sequence which, when incorporated into the genome of the animal, makes the animal highly susceptible to developing cancer. U.S. Patent No. 4,736,866, col. 1, ll. 31–42; U.S. Patent No. 5,087,571, col. 1, ll. 35–46; '803 patent, col. 1 ll. 35–39. The '866 patent was the first Harvard Mouse patent.

The second Harvard Mouse patent, the '571 patent, was filed as a divisional of the '866 patent. During prosecution of the '571 patent, the PTO rejected certain claims for obviousness-type double patenting in view of the claims of the '866 patent. Harvard responded to the double patenting rejection by filing a terminal disclaimer; it made no substantive arguments against the rejection except for pointing to the terminal disclaimer. Harvard's terminal disclaimer disclaimed any portion of the term "of any patent granted on the above-identified application *or on any application which is entitled to the filing date of this application* under 35 U.S.C. § 120." J.A. 1271–72 (emphasis added). It stated that the applicant intended that it "run with any patent so granted" and that it bind any of its successors or assignees. *Id.* The terminal disclaimer also stated that "[a]ccompanying this disclaimer is the fee set forth in 37 C.F.R. § 1.20(d)." J.A. 1272. In its submission to the PTO, which included the terminal disclaimer, Harvard authorized the PTO to charge any fees to its attorney's deposit account. Upon receipt of the terminal disclaimer, the PTO placed a copy in the official prosecution history of the '571 patent and withdrew its obviousness-type double patenting rejection, "in view of Applicant's arguments." J.A. 5347.

The '803 patent at issue in this case is the third Harvard Mouse patent and was filed as a continuation of the '571 patent. During an *ex parte* reexamination of the '803 patent, the examiner rejected the claims on double patenting grounds and found that the '803 patent had expired based on the terminal disclaimer filed during prosecution of the '571 patent. In response to the PTO's

rejection, Harvard filed an amendment adding several new claims, arguing that the '803 patent had not expired based on the terminal disclaimer and that the double patenting rejection was improper. In the next office action, the examiner withdrew the claim rejections and issued a notice of intent to issue a reexamination certificate for the original claims of the '803 patent. However, the examiner refused to allow Harvard to add new claims, reasoning that the '803 patent had expired based on the terminal disclaimer entered during prosecution of the '571 patent and that new claims cannot be entered into an expired patent. *See* 37 C.F.R. § 1.530(j).

Harvard petitioned the PTO Director for review, challenging the examiner's finding. It argued, in relevant part, that there was no evidence that it had paid the requisite terminal disclaimer fee and that, as a result, the terminal disclaimer was not legally entered into the prosecution history for the '571 patent and was therefore invalid. The Director dismissed Harvard's petition, finding that the terminal disclaimer was properly recorded and remained in effect, and that thus, the '803 patent had expired.

Harvard filed an Administrative Procedure Act (APA) action in district court challenging the PTO's refusal to enter the new claims on the ground that the '803 patent had expired. The district court granted summary judgment in favor of the PTO finding that the PTO's factual determination that Harvard submitted the requisite fee with the terminal disclaimer was not arbitrary or capricious or contrary to the law. *President and Fellows of Harvard College v. Rea*, No. 12-1034, 2013 WL 2152635, at *5 (E.D. Va. May 15, 2013). Harvard appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district

court.  *Burandt v. Dudas*, 528 F.3d 1329, 1332 (Fed. Cir. 2008).  Accordingly, with respect to actions brought under the APA, we will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The burden of showing the agency action was arbitrary and capricious lies with the plaintiff.  *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009).

Harvard argues that the PTO's finding that the '803 patent had expired as a result of the terminal disclaimer was arbitrary and capricious.  Harvard argues that to create an effective, valid terminal disclaimer, a patent applicant must pay the fee required by law.  35 U.S.C. § 253 (1975); 37 C.F.R. § 1.321(b) (1989).  In this case, it contends that the evidence establishes that Harvard failed to pay the required terminal disclaimer fee when it submitted its terminal disclaimer in 1989.  First, Harvard argues that it provided evidence in the form of a declaration from the attorney who handled prosecution of the '571 patent stating that he did "not believe that a check for payment of the [t]erminal [d]isclaimer fee was [filed]."  J.A. 5250.  He testified that his file for the '571 patent did not contain a copy of a check for the terminal disclaimer fee, and that his standard practice included placing a copy of any check submitted to the PTO in his files specific to the patent.  *Id.*  He also testified that he could not find any other evidence in his files showing that a check had been submitted.  Harvard also argues that it submitted a declaration from the Controller of the firm that handled the prosecution of the '571 patent indicating that he was unable to locate a canceled check for payment of the terminal disclaimer fee.  It further contends that the PTO had no actual evidence showing that the terminal disclaimer fee was paid because the PTO's records regarding fee payments only date back to June 1997 and thus do not cover the relevant period of time.

Next, Harvard argues that the PTO's handling of the terminal disclaimer establishes that it did not enter the terminal disclaimer into the official patent prosecution record, as it would have had Harvard paid the required terminal disclaimer fee. In particular, it notes that the PTO did not list the terminal disclaimer on the "Contents" page of the prosecution history of the '571 patent or give it a paper number as specified in the MPEP. MPEP § 717.01 (5th ed. Rev. 6, Oct. 1987). Further, it notes that the PTO failed to give the terminal disclaimer a date stamp, as required by the PTO rules. 37 C.F.R. § 1.6 (1989). Harvard also points out that neither the issued '571 patent nor the issued '803 patent bears any indication of a terminal disclaimer, even though it argues that it was the PTO's regular practice to identify terminal disclaimers on the face of the patent. Finally, it notes that the terminal disclaimer does not bear any marking acknowledging payment of the terminal disclaimer fee, as it contends it would have had the fee been paid based on the PTO's regular practice. It contends that every other document in the prosecution history that required a fee included a notation indicating receipt of payment. It argues that the lack of such a notation on the terminal disclaimer is evidence that the payment was not submitted.

Harvard further contends that the fact that the examiner withdrew her obviousness-type double patenting rejection to certain claims of the '571 patent after the terminal disclaimer was filed does not establish that Harvard paid the terminal disclaimer fee. It argues that, while the examiner withdrew the claim rejections based on the patentee's "arguments," she did not identify the terminal disclaimer as the reason for withdrawing her objection. J.A. 5347. It argues that the PTO previously concluded that the prosecution history was "inconclusive" as to the examiner's rationale for withdrawing the obviousness-type double patenting rejection, and that the

PTO cannot now contend that the rejection was withdrawn based on the terminal disclaimer. J.A. 5340.

We hold that the district court properly concluded that the PTO's factual finding that Harvard paid the terminal disclaimer filing fee, and that the terminal disclaimer was therefore effective and binding, was not arbitrary or capricious. While we might have reached a different result if we were weighing the evidence in the first instance, this we cannot do. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We review the record to determine whether the fact finding was arbitrary and capricious. The "arbitrary [and] capricious" standard is the "most deferential of the APA standards of review," *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000), and is only met where a reviewing court can conclude with "definite and firm conviction" that a clear error of judgment or a mistake has been committed, *PGBA, LLC v. United States*, 389 F.3d 1219, 1231 (Fed. Cir. 2004). The touchstone of the arbitrary and capricious standard is rationality; we must sustain an agency action evincing rational reasoning and consideration of relevant factors. *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)); *Hyundai Elecs. Indus. Co. v. Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed. Cir. 1990) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

We find that the record contains a rational basis to support the PTO's factual finding that Harvard paid the terminal disclaimer fee. First, Harvard expressly stated, in the terminal disclaimer itself, that "accompanying this disclaimer is the fee set forth in 37 C.F.R. § 1.20(d)." J.A. 1272. This constitutes evidence, from the relevant time, that the fee was filed with the terminal disclaimer. Next, the agency's factual finding that the terminal disclaimer fee was submitted is supported by the examination histo-

ry. In particular, the examiner withdrew the obvious-ness-type double patenting rejection only after Harvard submitted its terminal disclaimer; in fact, the terminal disclaimer was Harvard's only response to the double patenting rejection. While this evidence may be "incon-clusive," *see* J.A. 5340, it nevertheless lends support to the finding that Harvard submitted the necessary fee. Final-ly, the PTO recorded the terminal disclaimer without making any mention of a missing filing fee, which it likely would have had the fee been absent. Collectively, this evidence provides a rational basis for the PTO's factual finding that the terminal disclaimer fee was filed.

Nor is the contrary evidence upon which Harvard re-lies so "overwhelming" that it would render the PTO's finding arbitrary and capricious. The three declarations that Harvard relies upon were executed over twenty years after the operative event and none conclusively establish-es that the fee was not paid. In particular, two of the declarations provide only that those individuals were unable to locate evidence of a check in their records from twenty years ago, and the third only that the declarant "did not believe he submitted a check for the terminal disclaimer." J.A. 5250.

Harvard's only other evidence that the fee was not paid is that the PTO procedurally mishandled the termi-nal disclaimer, by failing to affix certain notations to the terminal disclaimer or the ultimate patent, and by failing to place the terminal disclaimer on the contents page of the prosecution history. We have previously rejected similar arguments, finding that a terminal disclaimer was recorded and valid, regardless of mishandling by the PTO. *See Vectra Fitness, Inc. v. TWNK Corp.*, 162 F.3d 1379, 1381–82 (Fed. Cir. 1998). In *Vectra Fitness*, although the PTO added a terminal disclaimer to the prosecution history, it failed to enter the terminal disclaimer on the cover page or contents page of the prosecution history, and failed to publish the terminal disclaimer in the Offi-

cial Gazette as contemplated by PTO regulations. *Id.* at 1381 (citing 37 C.F.R. § 1.321(a) (1990)). We held that because "nothing in the statutes or regulations requires any action by the PTO for a disclaimer to be 'recorded,'" the terminal disclaimer applied to the patents-at-issue. *Id.* at 1382. In this case, while the PTO may have procedurally mishandled the terminal disclaimer when placing it in the file, this does not render arbitrary and capricious the PTO's factual finding that the terminal disclaimer fee was nonetheless paid.

## CONCLUSION

We conclude that the evidence as a whole provides a rational basis for the PTO's conclusion that the terminal disclaimer fee was paid. As such, we find that the district court properly concluded that the PTO's decision was not arbitrary or capricious. We *affirm*.

**AFFIRMED**